IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| UNITED STATES OF AMERICA, Plaintiff, v. PAUL ANDREW LARSON, Defendant. | MEMORANDUM DECISION AND ORDER  Case No. 2:11CR715DAK |
|---|---|

This matter is before the court on Defendant Paul Andrew Larson's Motion in Limine Re: Rule 404(b). On November, 17, 2011, the court held a hearing on the motion. After hearing argument from counsel, the court took the motion under advisement. Based on the memoranda filed by the parties, the arguments advanced at the hearing, and the law and facts relevant to the motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Defendant Paul Larson was previously tried for the offenses charged in the Indictment. After trial and an appeal, the prior case was dismissed without prejudice for violation of the Speedy Trial Act. In the prior case, Larson was indicted with a co-defendant, Kip Beesley, who entered into a plea agreement with the United States. Because the charges against his co-defendant were resolved in the first case, when the United States re-indicted Larson in the present case, it brought charges against only Larson.

1

The United States seeks to introduce the following general categories of evidence at trial:

1. Testimony of Robert Brewer that Larson used and manufactured methamphetamine at the house where he was arrested 6 months before he was arrested.

2. Testimony of Kip Beesley that he obtained methamphetamine from Larson on several occasions and was loading the meth lab from the residence at the behest of Larson when they were both arrested in January of 2006.

3. Evidence of Larsen's three convictions on October 2, 2000, for attempted operation of a clandestine laboratory, third degree felony, attempted operation of a clandestine laboratory, second degree felony, and possession with intent to distribute controlled substances, third degree felony.

**1. Testimony of Brewer**

Specifically, the United States intends to offer testimony from Brewer that Larson rented the Wall Street house, where Larson was arrested on this offense, in the summer of 2005 for the specific purpose of manufacturing methamphetamine. Brewer and Larson did property maintenance work for the landlord in exchange for use of the house. Brewer will testify that Larson did not live at the Wall Street house. Rather, he used the property to manufacture methamphetamine, and to store the meth lab and chemicals. Brewer will testify that obtained some furniture for the house at Larson's request, so the apartment would look "normal."

Brewer will further testify that he was personally present at the Wall Street house on at least two occasions while Larson used the meth lab to manufacture methamphetamine. Brewer also came to the house after Larson had manufactured methamphetamine on several occasions to help clean up the lab and chemicals, and to help hide the lab. Brewer will also testify that he

helped Larson move the meth lab from the Wall Street house into a storage unit on a prior occasion in the fall of 2005.

Brewer's interactions with Larson at the Wall Street house occurred sometime during the summer and fall of 2005. Prior to Larson's arrest in January of 2006, Larson and Brewer had a falling out, and were no longer associating with each other.

**2. Testimony of Prior Co-defendant Kip Beesley**

The United States also seeks to introduce testimony from Kip Beesley, Larson's co-defendant in the original case. Beesley will testify that he met Paul Larson in 1992 and knew him off and on from then. In 2005, Beesley started hanging out with Larson again.

Beesley will testify that he was purchasing "8-balls" of methamphetamine from Larson in the weeks and months leading up to their arrest from the Wall Street residence where they were both arrested for the instant offenses. In late 2005, Beesley took Larson to Arizona to work on a construction job. Larson told Beesley that he wanted to get away from methamphetamine at that time, and Beesley did too. Both of them agreed to go work in Arizona together. However, they both lapsed back into methamphetamine use.

After the Arizona job, when they were both back in Salt Lake City, Larson contacted Beesley to move some household items from a house on 700 East to a storage unit. Larson asked Beesley because he had a truck. Beesley moved the items for Larson as requested. A couple days later, on January 20, 2006, Larson asked Beesley to move some stuff, including the meth lab, from the Wall Street apartment. Beesley agreed to do so in exchange for some methamphetamine from Larson. They were both arrested at the Wall Street apartment while they were in the process of moving the meth lab. Many of the materials were already in Beesley's

truck at that time.

Larson and Beesley were placed in the same jail awaiting trial on this case. Beesley will testify that at the jail, Larson told him not to cooperate with law enforcement. Larson said to Beesley, "we can beat it if we take it to the [jury] box". "No 5K."

### 3. Prior Convictions

The United States also intends to introduce evidence of Larson's three convictions in 2000. October 2, 2000, Larson pled guilty to and was convicted of attempted operation of a clandestine laboratory, third degree felony, attempted operation of a clandestine laboratory, second degree felony, and possession with intent to distribute controlled substances, third degree felony. Although the convictions were all on the same day, the clandestine laboratory convictions related to different conduct at different times.

## DISCUSSION

## Larson's Motion in Limine Re: Rule 404(b)

Larson moves for an order prohibiting the government from introducing the evidence detailed above. Larson argues that this evidence is inadmissable under Rule 404(b) of the Federal Rules of Evidence because it is not being offered for a proper purpose and only serves to show Larson's propensity to commit the present crime. Larson also argues that the evidence is more prejudicial than probative under Rule 403 of the Federal Rules of Evidence.

### 1. Brewer's and Beesley's Testimony

The United States argues that Brewer's and Beesley's testimony cannot be excluded because it is inextricably intertwined with the present offense and provides necessary context and background. Evidence which is "inextricably intertwined" with the evidence used to prove the

crime charged is admissible to enable the jury to evaluate all of the circumstances under which the defendant acted. *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989). "One of the key words in determining the scope of Rule 404(b) is 'other': only crimes, wrongs, or acts 'other' than those at issue under the pleadings are made inadmissible under the general rule. Courts have denominated evidence of the same crime 'intrinsic' and evidence of 'other' crimes 'extrinsic.'" *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cri. 2000). Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of 404(b), and is therefore not barred by the rule. *United States v. Maceo*, 947 F.2d 1191, 1198 (5th Cir. 1991).

The Tenth Circuit has stated that the *res gestae* doctrine applies if "a witness's testimony would have been confusing and incomplete without mention of the prior act" and if the act is "part and parcel of the proof of the offense." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010). The Tenth Circuit has also deemed evidence "intextricably intertwined" where the prior acts constitute "necessary preliminaries to the crime charged." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993).

Larson contends that the prior bad acts in the testimony of Brewer and Beesley cannot be inextricably intertwined because it involves activity that is extrinsic to the charged offense. Larson claims that Brewer's testimony regarding manufacturing in the home six months before the arrest is extrinsic because Brewer was not present on the date of the charged offense. But Larson and Brewer's association at the same house conducting the same activities for which Larson was arrested is part of the same criminal episode, and is necessary preliminary information to the crime charged. Brewer's testimony as to these joint criminal activities with

5

Larson is directly relevant to Larson's relationship to the premises, his attempt to manufacture methamphetamine at the residence, and his ownership of listed chemicals in January of 2006. Brewer's testimony is direct proof that the materials found at the Wall Street residence on January 20, 2006 were Larson's and not Beesley's or someone else's. Brewer's testimony directly refutes Larson's proposed defense - that the lab components and chemicals were not his. Brewer's testimony is that he and Larson did maintenance work in order to pay the rent for the Wall Street residence, where they intended to manufacture methamphetamine, not reside. The testimony ties Larson to the residence and indicates that the contents of the residence belonged to him. Therefore, this evidence is properly admitted under Rules 401 and 402, and is not excluded under Rule 404.

With respect to Beesley's anticipated testimony, the fact that Beesley was obtaining methamphetamine from Larson at the Wall Street residence in the days and weeks leading up to their arrest is highly probative of whether Larson attempted to manufacture methamphetamine, and owned the materials and equipment in question. These facts do not create a substantial danger of unfair prejudice, as they do not suggest a decision by the jury on an emotional basis. They merely allow the jury to put Beesley's entire testimony into context, to evaluate his credibility, and to determine his and Larson's respective roles in the offenses charged on January 20, 2006.

Without Beesley's testimony about his prior relationship with Larson and their dealings with the meth lab, the jury would be presented with an incomplete story and could be confused about the men's relationship to each other and the Wall Street residence. If limited to the specific events of January 20, 2006, Beesley's testimony would be only that he went to move

6

"stuff" for Larson, which included meth lab components and chemicals. Defendant Larson could then argue that Beesley is not a credible witness as there is nothing that corroborates his testimony that the components and chemicals were Larson's and not Beesley's. That lack of context to Beesley's testimony, plus the fact that Beesley received a "substantial assistance" reduction for his truthful testimony, could devalue Beesley's testimony to the point of very limited value. Such limitation would be fundamentally unfair, as it would allow Larson to present an incomplete, or even false impression of Beesley's and Larson's interactions and participation in the crimes charged.

2. **Rule 404(b)**

With respect to the 404(b) analysis, Larson relies heavily upon the Tenth Circuit case of *United States v. Commanche*, 577 F.3d 1261 (10th Cir. 2009). In *Commanche*, the court addressed whether evidence that shows intent is admissible under Rule 404(b) if the evidence is logically dependent upon the prohibited propensity inference. "In some instances, the permissible purposes of Rule 404(b) evidence are logically independent from the impermissible purpose. . . . In other cases, bad act evidence bears on a permissible purpose only if a jury first concludes that a defendant likely acted in conformity with a particular trait." *Id.* Given this distinction, the court held that only "permissible purpose" evidence that does not depend upon a prohibited inference is admissible: "We hold that evidence is admissible under Rule 404(b) if it is relevant for a permissible purpose and that relevance does not depend on a defendant likely acting in conformity with an alleged character trait." *Id.* at 1267. *Commanche* places the burden on the government to "clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime

7

charged." *Id.*

Larson argues that the government has not met its burden in this case. Larson's prior convictions show criminal intent only if the jury believes that Larson acted in conformity therewith. A logical connection exists between the prior lab convictions and the current offense only if Larson acted in conformity with his 2000 convictions. Therefore, Larson asks the court to prevent the government from entering the 2000 convictions into evidence during its case-in-chief. Larson acknowledges that if he chooses to testify at trial, a different analysis applies.

The government points out, however, that Larson has indicated that his defense to the charges in this case will be that he did not possess the equipment or chemicals. The government states that Larson intends to lay blame on his prior co-defendant Beesley. At trial Beesley will testify, and Larson will be able to cross-examine Beesley regarding his prior associations with methamphetamine. Therefore, the government argues that it would be unfair to the government to exclude any reference to Larson's prior history and allow Larson to paint the picture that he was an innocent bystander to Beesley's criminal conduct. By mounting such a defense, the government contends that Larson has put at issue intent, plan, and knowledge, each of which is a proper purpose for which the government intends to offer the prior convictions to prove.

For purposes of a pretrial ruling, the court will preclude the government from introducing Larson's three convictions from 2000 in its case-in-chief. However, the court agrees with the government that this ruling could allow Larson to paint an unfair picture of Beesley's criminal history while hiding his own. If Larson's counsel unduly focuses on Beesley's criminal history in a manner that appears to distort or draw a distinction from Larson's own history, the court may revisit the admissibility of the convictions during trial. But, in the government's case-in-chief,

8

the evidence cannot come in because prior manufacturing and meth lab convictions are offered only to show that he acted in conformity with the prior bad acts.[1]

Larson also argues that the testimonial evidence from Brewer and Beesley as to Larson's manufacturing on another date is a separate crime and cannot be introduced. Moreover, Larson claims that exclusion of prior manufacturing would not render Brewer's testimony confusing or incomplete. The court, however, disagrees. The government must tie Larson to the Wall Street residence, the equipment, and the chemicals in order to prove the offense. Brewer's testimony is that he and Larson entered into an arrangement with the landlord to do property maintenance work instead of paying rent and that they obtained the home solely to use it to manufacture methamphetamine, not to live in it. That evidence is highly probative of the offenses charged. If the court were only to allow the government to introduce evidence that Larson had access to the property, the jury would be given an incomplete and confusing version of the events leading up to the offense in question. Rule 404(b) is not intended to allow a defendant to paint an inaccurate picture of his role in the offense.

In addition, Brewer's testimony that Larson possessed and used the equipment and chemicals at that residence, even if it was on a different date from the offenses charged, is highly relevant to crimes charged. The fact that it was a crime to have possessed or used those items on

---

[1] With respect to the proximity in time of the prior convictions, the Tenth Circuit has held that "there is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir. 1983). In this case, the 2000 convictions are from acts committed in 1998 and 2000, but Larson was not released from prison until September 2003 and was not released from parole until September 2004. The government points out that it was only 15 months from the time Larson got off probation from the prior offenses that he was charged in this case. Therefore, if the court ultimately allows the convictions to be entered into evidence at trial, it finds no problems with respect to timing.

a different date, does not automatically preclude the introduction of that evidence. The fact that Beesley had purchased methamphetamine from Larson at the Wall Street residence that Larson had manufactured at the residence may be a separate crime, but it also demonstrates and relates to the parties' relationship to each other and the residence and puts the events of January 20, 2006 into context. To exclude that evidence would be to distort the circumstances of the case and paint an incomplete picture to the jury. Accordingly, the court finds no bar to the introduction of Brewer's and Beesley's testimony as to Larson's activities at the Wall Street residence in the months and weeks leading up to the arrest. However, because the court, preliminarily, is not allowing the introduction of Larson's 2000 convictions, the government should not mention or allow Beesley or Brewer to mention the fact that they were in prison with Larson. The court also fails to see the relevance of or need for evidence of Beesley's buys from Larson prior to what occurred at the Wall Street residence.

### 3. Rule 403 Balancing Test

Under a 403 balancing test, the government argues that given Larson's proposed defense that he did not possess the meth lab components or chemicals, the evidence the government seeks to introduce is more probative than prejudicial. Only unfair prejudice, that is prejudice that suggests a decision on an emotional rather than an evidentiary basis, is prohibited by the rule. *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983). The Tenth Circuit has repeatedly allowed the introduction of prior drug transactions to prove intent, knowledge, motive, and absence of mistake in drug prosecutions. *United States v. Russell*, 109 F.3d 1503, 1507 (10th Cir. 1997). The court believes that the testimonies of Brewer and Beesely are more probative than prejudicial. The court, however, will give the jury a limiting instruction to ensure that the jurors

10

properly consider the evidence.

## CONCLUSION

Based on the above reasoning, Defendant's Motion in Limine is GRANTED IN PART AND DENIED IN PART, as discussed above.

DATED this 21st day of November, 2011.

BY THE COURT:

DALE A. KIMBALL
United States District Judge